ACCEPTED
14-15-00252-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
8/24/2015 8:12:07 PM
CHRISTOPHER PRINE
CLERK

**ORAL ARGUMENT REQUESTED**

Case No. 14−15−00252−CR

_____

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
8/24/2015 8:12:07 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS

FOURTEENTH DISTRICT OF TEXAS

_____

**JUAN JOSE QUINTERO,**
**Appellant**

**v.**

**THE STATE OF TEXAS,**
**Appellee.**

_____

Appealed from the 351st Judicial District Court of Harris County, Texas
Trial Court Cause Number: 1390666
The Honorable Mark Kent Ellis, Presiding

_____

**BRIEF OF APPELLANT, JUAN JOSE QUINTERO**

_____

Niles Illich
SBOT: 24069969
The Law Office of Niles Illich, Ph.D., J.D.
701 Commerce
Suite 400
Dallas, Texas 75202
Telephone: (972) 802−1788
Facsimile:  (972) 236−0088
Email: Niles@appealstx.com

**ATTORNEY FOR**
**APPELLANT JUAN JOSE QUINTERO**

---

## IDENTITY OF THE PARTIES AND COUNSEL

---

*Trial Court Judge*:                    The Honorable Mark Kent Ellis

*Appellant*:                            JUAN JOSE QUINTERO

    <u>Trial Attorney</u>:                 Mr. James Sims
                                       440 Louisiana Street
                                       Suite 200
                                       Houston, Texas 77002

    <u>Appellate Counsel</u>:              Niles Illich
                                         SBOT: 24069969
                                         Law Office of Niles Illich, Ph.D., J.D.
                                         701 Commerce
                                         Suite 400
                                         Dallas, Texas 75202
                                         Direct: (972) 802−1788
                                         Facsimile: (972) 236−0088
                                         Email: Niles@appealstx.com

*Appellee*:                             THE STATE OF TEXAS

    <u>Trial and Appellate Counsel</u>:    Allan Curry
                                         Mike Anderson
                                         Devon Anderson
                                         Joseph Allard (at trial)
                                         Kristin Assaad (at trial)
                                         Harris County District Attorney's Office
                                         Criminal Justice Center
                                         1201 Franklin
                                         Houston, Texas 77002

_____

## TABLE OF CONTENTS
_____


### Contents

IDENTITY OF THE PARTIES AND COUNSEL ................................................ ii

TABLE OF CONTENTS.................................................................................... iii

TABLE OF AUTHORITIES ...............................................................................v

STATEMENT OF CASE ................................................................................ viii

STATEMENT CONCERNING ORAL ARGUMENT.......................................... ix

ISSUES PRESENTED.......................................................................................x

STATEMENT OF FACTS ................................................................................11

1.  John Hermesch................................................................................11

2.  Officer J. Bonnin ...........................................................................14

3.  Officer A. Barr...............................................................................14

4.  Officer B. Tesfay ...........................................................................15

5.  Maria Hernandez ...........................................................................15

6.  Detective M. Stahlin ......................................................................15

7.  Dr. Morna Gonsoulin......................................................................16

8.  Karen Reyes...................................................................................17

9.  Lois E. Williams-Rasmus ...............................................................18

SUMMARY OF THE ARGUMENT ...................................................................19


**FIRST ISSUE PRESENTED FOR REVIEW**: The evidence was legally insufficient to support the verdict because there was no evidence, circumstantial or direct, to establish the required mental state...........................................21

1.  Standard of Review for a Legal Sufficiency Challenge ...................21

2. Rational Trier of Fact in a Legal Sufficiency Review......................................22

3. Murder .................................................................................................................23

4. Proof for Establishing Culpable Mental State ...................................................24

   a. Law Governing Evidence of Culpable Mental State.....................................24

   b. Cases Where Culpable Mental State was Established through
Circumstantial Evidence ...................................................................................24

   c. The Culpable Mental State is a Required Element .......................................25

5. Facts of Quintero's Case.....................................................................................26

6. Application of Facts to Law ................................................................................27


**SECOND ISSUE PRESENTED FOR REVIEW**: The trial court committed
reversible error in denying Quintero a hearing on his motion for new trial because
it was timely filed and presnted. ..............................................................................31

1. Standard of Review..............................................................................................31

2. Law .......................................................................................................................31

3. Facts .....................................................................................................................32

4. Analysis ................................................................................................................33

5. Error Analysis.......................................................................................................34

CERTIFICATE OF COMPLIANCE.........................................................................36

CERTIFICATE OF SERVICE ..................................................................................36

APPENDIX……………………………………………………………………….…37

_____

TABLE OF AUTHORITIES
_____

Cases

*Brooks v. State*,
323 S.W.3d 893, 906−07 (Tex. Crim. App. 2010) (plurality op.)..........................23

*Butler v. State*,
6 S.W.3d 636, 640–41 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) .............32

*Clayton v. State*,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007) .......................................................21

*Hart v. State*,
89 S.W.3d 61, 64 (Tex. Crim. App. 2002) ............................................................24

*Herrera v. State*,
367 S.W.3d 762, 770 (Tex. App.—Houston [14th Dist.] 2012, no pet.)
....................................................................... ……………….23, 24, 28, 30

*Hooper v. State*,
214 S.W.3d 9, 15 (Tex. Crim. App. 2007) ...................................................... 22, 30

*Jackson v. Virginia*,
443 U.S. 307, 318−19, 99 S.Ct. 2781, 2789 (1979) ...............................................21

*Johnson v. State*,
915 S.W.2d 653, 658 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).............26

*King v. State*,
29 S.W.3d 556, 559 (Tex. Crim. App. 2000). ......................................................32

*King v. State*,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) ........................................................34

*Mason v. State*,
905 S.W.2d 570, 574 (Tex. Crim. App. 1995) (enbanc) ........................................21

*Mayreis v. State*,
_____ S.W.3d_____, No. 14-13-00769-CR, 2015 Tex. App. LEXIS 2746, *4 (Tex.
  App.—Houston [14th Dist.] March 24, 2015, pet
  ref'd.)....................................24

*Mendieta v. State*,
706 S.W.2d 651, 652 (Tex. Crim. App. 1986). ......................................................26

*Moore v. State*,
969 S.W.2d 4, 10 (Tex. Crim. App. 1996) .............................................................24

*Rozell v. State*,
176 S.W.3d 228, 230 (Tex. Crim. App. 2005) .......................................................32

*Saunders*,
913 S.W.2d at 572.................................................................................................26

*Smith v. State*,
286 S.W.3d 333, 339 (Tex. Crim. App. 2009). ......................................................31

*Umanzor v. State*,
No. 14-13-00958-CR, 2015 Tex. App. LEXIS 2281, *9−13 (Tex. App.—Houston
  [14th Dist.] March 26, 2015, pet. ref'd.) (memo op.) (not designated for
  publication). ............................................................................................. 25, 28

*Williams v. State*,
294 S.W.3d 674, 683 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ...............25

## Statutes

TEX. PENAL CODE § 19.02......................................................................... viii, 11

TEX. PENAL CODE § 19.02(b) .................................................................. 23, 27, 30

TEX. PENAL CODE § 6.03(a) ................................................................... 23, 28, 30

TEX. PENAL CODE § 6.03(b);.................................................................. 24, 28, 30

## Rules

TEX. R. APP. P. 21.3 ..................................................................................34

TEX. R. APP. P. 21.4(a)..............................................................................33

TEX. R. APP. P. 21.4(a). .............................................................................31

TEX. R. APP. P. 21.6 ..................................................................................32

TEX. R. APP. P. 44.2(b)..............................................................................34

_____

## STATEMENT OF CASE
_____

On August 12, 2013, the State of Texas indicted Juan Jose Quintero for the murder of Ronald Stelly.[1]  [CR 22].  The parties exchanged the ordinary and usual discovery motions.  Quintero's trial began with voir dire on February 13, 2015.  [1 RR 3].  A jury convicted Quintero four days later and on that same day sentenced him to spend the remainder of his life in the custody of the Texas Department of Criminal Justice. [CR 149; 151; 1 RR 5; 5 RR 51].

At trial, the attorney for the State called nine witnesses and rested.  [1 RR 3−4].  Quintero did not call any witnesses.  The trial court presented the parties with the jury charge and then submitted the case to the jury for deliberation.  On February 15, 2015, the jury found Quintero guilty.  [4 RR 46].  That day the jury sentenced Quintero to spend the remainder of his life in the custody of the Texas Department of Criminal Justice.  [CR 149; 151].

Quintero filed a motion for new trial, but the trial court denied the motion because it was not argued to the Court within ten days of being filed.  [CR 172−93; 210].

Quintero timely filed his notice of appeal.  [CR 155].

_____

[1] TEX. PENAL CODE § 19.02.

---

## STATEMENT CONCERNING ORAL ARGUMENT
_____

Quintero requests oral argument. This case presents two unusual circumstances. The first is a total lack of circumstantial evidence relating to the mental state of the Appellant. The second is a denial by the trial court of a valid motion for new trial that the trial court determined had been overruled by operation of law fifty-one days after it had been filed because it was not argued within ten days of the verdict. Accordingly, Quintero believes that oral argument will facilitate this Court's decisional process.

_____

## ISSUES PRESENTED

_____

FIRST ISSUE PRESENTED: Nine witnesses testified during trial. None of these witnesses provided evidence of Quintero's mental state. To convict a defendant of murder there are required mental states. Because there was no evidence, circumstantial or direct, of Quintero's mental state, is the evidence legally insufficient to support the verdict?

SECOND ISSUE PRESENTED: Quintero timely filed a motion for new trial that was supported by his sworn testimony. This motion alleged that Quintero's attorney failed to investigate a legitimate claim for self-defense and therefore did not elicit testimony to support such an instruction during the trial and therefore could not ask for a jury instruction on this. Quintero's attorney emailed the court coordinator concerning the motion for new trial and set the motion for hearing. The trial court denied the motion without hearing on the basis that it had not been argued to the court within ten days of the verdict being announced. Did the trial court err?

**To the Honorable Justices of the Fourteenth Court of Appeals:**

Juan Jose Quintero presents this, his brief in support of his appeal.

_____

STATEMENT OF FACTS
_____

On August 12, 2013, the State of Texas indicted Juan Jose Quintero for the murder of Ronald Stelly.[2] [CR 22]. Quintero's trial began with voir dire on February 13, 2015. [1 RR 3]. At trial, the attorney for the State called nine witnesses and then rested. [1 RR 3−4]. Quintero's attorney then asked for a directed verdict. The trial court denied the request and Quintero rested. Neither side objected to the jury charge as submitted to them by the trial court. [5 RR 46].

1.     John Hermesch

As their first witness, the attorneys for the State called John Hermesch. [2 RR 14]. Hermesch testified that he is a life-long resident of Houston, that when he works that he works on cellular phone towers for AT&T, that he had not used drugs for eleven months, that he had several combined felony and misdemeanor convictions for theft, and that he was affiliated with the Houstone [*sic.*] prison gang and that the affiliation was manifest through a "713" tattooed on his face. [4 RR 14−16; 39; 44].

_____

[2] TEX. PENAL CODE § 19.02.

11

Hermesch testified that he was at the Astro Inn on June 4, 2013. [4 RR 16]. According to Hermesch, he was at the Astro Inn because it was "somewhere to stay for the night." [4 RR 19]. Although he typically stayed at the Covenant House, a shelter for homeless and troubled youths, Covenant House had suspended Hermesch for the night of June 4, 2013. [4 RR 49]. Hermesch testified that he met a man with the nom de guerre "Black" at the Astro Inn. [4 RR 20−21]. Hermesch testified that he and Black then used crack cocaine and then decided to "go get some more." [4 RR 21; 23; 47]. According to Hermesch, Black spoke with Quintero about acquiring more crack cocaine in an area close to the second floor room that Hermesch had secured. [4 RR 21−22]. Hermesch conceded that at all relevant times he was under the influence of crack cocaine but contended that "it didn't impair [his] judgment." [4 RR 58]. After this brief conversation, Quintero left, entered a hotel room, and agreed that the drug sale should occur across the street at a NAPA car store because there were too many police officers around the hotel. [4 RR 24; 29]. Hermesch testified that Black was going to pay for the crack cocaine and that Black "went around the corner" to complete the transaction with Quintero. [4 RR 29].

Hermesch testified that Quintero was driving a car and that Quintero did not want Hermesch to be part of the drug deal. [4 RR 29].

Hermesch testified that after approximately ten minutes that he returned to the hotel room alone. [4 RR 31]. After sitting down, Hermesch got up and opened the door and then "heard two gunshots fire off." [4 RR 31]. Hermesch testified that he roused his friend, Lamar Davis, and explained that he had heard two gun shots and that he believed Black had been shot "because he was out there." [4 RR 31]. Hermesch testified that he and Lamar walked towards the area where "the exchange was supposed to occur." [4 RR 33]. Hermesch testified that as he approached the area where the exchange was to have occurred he did not see any vehicles and then Davis suggested that going any further might be unwise and apparently the two turned and began walking back to the hotel. [4 RR 34−35]. Hermesch testified that after he and Davis walked for about a minute that he insisted that they "turn around" and go back to the location where the drug deal was to have occurred. [4 RR 34−35].

After the pair turned around and walked out into the street, Hermesch and Davis found a body "laying in the median or whatever." [4 RR 36]. Hermesch and Lamar then sought emergency assistance.

On cross-examination, Hermesch conceded that unspecified people had blamed him for this shooting and even claimed that Hermesch had bragged about committing the offense. [4 RR 49]. Hermesch then testified that "I did not see him get shot." [4 RR 51]. Hermesch testified that Stelly was killed, "not even five

13

minutes" after Hermesch left Black and Quintero. [4 RR 54; 59]. Hermech testified later that he saw a car that was going to the site of the exchange and then he heard two shots. [4 RR 54].

Hermesch testified that he did not ever see Quintero with a firearm. [4 RR 56].

## 2. Officer J. Bonnin

As their next witness, the attorneys for the State called Officer J. Bonnin of the Houston Police Department. [4 RR 61]. Officer Bonnin testified to being on duty on June 5, 2014 around 2:30 AM and to responding to a call for aid at the Astro Inn. [4 RR 62−65]. Officer Bonnin testified that when he approached the scene of the shooting that he saw two men trying to get his attention and then later a man lying in the median. [4 RR 65−66]. According to Officer Bonnin, the man lying on the median never spoke. [4 RR 67]. An ambulance arrived shortly after Officer Bonnin and found the man on the median. [4 RR 68].

On cross-examination, Officer Bonnin testified that gunfire around the Astro Inn is "very infrequent." [4 RR 70]. Officer Bonnin testified that Lamar Davis presented himself to the police as Roosevelt Davis. [4 RR 71].

## 3. Officer A. Barr

The attorneys for the State then called Officer A. Barr, also a veteran member of the Houston Police Department. [4 RR 73]. Officer Barr testified that

14

on June 5, 2013 that he was a member of the Crime Scene Unit and that he was dispatched to the Astro Inn. [4 RR 75]. Through Officer Barr, the attorneys for the State admitted photographs of the scene of Stelly's death, and, among other items, a five dollar bill, a bullet core, two bullet shell casings, and a shoe. [4 RR 77−78; 83; 91]. Neither the bullet core nor the five dollar bill was tested for fingerprints or for evidence of DNA. [4 RR 88].

4.      Officer B. Tesfay

Then the attorneys for the State called Officer B. Tesfay. [4 RR 96]. He too was a police officer with the Houston Police Department. [4 RR 96]. Officer Tesfay assisted in the recovery of video footage of the Astro Inn on the night of the shooting. [4 RR 98].

5.      Maria Hernandez

As their next witness, the attorneys for the State called Maria Hernandez, an employee of the Astro Inn. [4 RR 104]. She testified that Stelly lived at the Astro Inn and that Quintero checked into the hotel on the night Stelly died. [4 RR 108; 117−18]. She testified that from her office that she could not see the median where Stelly died. [4 RR 125].

6.      Detective M. Stahlin[3]

---

[3] According to Detective Stahlin, "[t]he Houston Police Department doesn't have the rank or position of detective." [4 RR 171]. Instead, he characterized himself as "an officer that

The attorneys for the State then called Detective Stahlin, of the Homicide Division of the Houston Police Department. [4 RR 127; 136]. By the time that Detective Stahlin arrived at the scene, Stelly's body had been removed. [4 RR 136]. Detective Stahlin described arriving at the scene and speaking with different people. [4 RR 136−41]. The people with whom he spoke did not provide useful information. [4 RR 142−43]. Then he testified to the process of recovering the security videos from the Astro Inn and he described what the jurors were shown on these videos. [4 RR 145−50]. The security video showed Quintero checking into the Astro Inn and driving a white car. [4 RR 150−51]. The video skipped to 2:19 AM, when it showed Quintero getting into a white car and backing it out of a parking spot. [4 RR 151−52]. Detective Stahlin testified that the video showed Quintero stopping the car at the Astro Inn's exit to Cavalcade. [4 RR 153−54]. The last image on the video was a female passenger "leaning forward and motioning to [Quintero.]" [4 RR 154].

Detective Stahlin testified that the video did not show Stelly's death. [4 RR 155]. The video did show Stelly "following" the car. [4 RR 160].

Detective Stahlin testified that three people identified John Hermesch as the person who had killed Stelly. [4 RR 176].

7. Dr. Morna Gonsoulin

---

investigates murders." [4 RR 171]. Because he is referred to as a detective in the record, he will be so addressed in this brief.

16

The attorneys for the State then called an assistant medical examiner, Dr. Gonsoulin. [4 RR 186]. Dr. Gonsoulin performed the autopsy on Stelly's body. [4 RR 189]. She testified that Stelly had been shot just above his "buttocks crease" and that the bullet damaged his internal organs and then exited through his abdomen. [4 RR 189−92; 196]. According to Dr. Gonsoulin, Stelly had ingested cocaine and PCP shortly before his death. [4 RR 197]. Dr. Gonsoulin testified that a gunshot wound caused Stelly's death. [4 RR 197−98].

8.    Karen Reyes

As their next witness, the attorneys for the State called Quintero's sister-in-law Karen Reyes. [5 RR 3−4]. Reyes testified that she was with Quintero on June 5, 2013 at the Astro Inn. [5 RR 5]. She testified that Quintero was driving her car on June 5, 2013. [5 RR 7].

Reyes testified to having taken "bars" of the prescription medicine Xanax and to not remembering the evening of June 4, 2013 or the morning of June 5, 2013 very well. [5 RR 8−9].

Reyes testified that Quintero had a gun on June 4, 2013, but she was only able to testify to this because Quintero had shown it to her "[e]arlier in the day." [5 RR 9]. According to Reyes the gun was a "medium black gun" but she could not recall whether it was an "automatic or a revolver." [5 RR 10]. She testified that she left a room in the Astro Inn with Quintero because she wanted to go home.

17

[5 RR 10]. She then testified that she and Quintero encountered two people and they then got into her car and "drove." [5 RR 12].

Reyes testified that the car stopped and that she "just heard gunshots." [5 RR 13]. She testified that when she heard the gunshots, Quintero was outside of the car. [5 RR 13]. She testified that she saw "the black guy," one of the people they had seen at the hotel, and that after she heard the shots that they "just left." [5 RR 13]. As they were leaving, she saw "the black man" by "the tree." [5 RR 13]. On cross-examination, Reyes testified that she did not see the shooting and that the events of that night were difficult for her to remember because she had ingested Xanax. [5 RR 16−19].

9.      Lois E. Williams-Rasmus

As their final witness, the attorneys for the State called Lois E. Williams-Rasmus who identified Stelly as her son. [5 RR 24].

The attorneys for the State then rested their case, Quintero asked for a directed verdict, which the trial court denied, and then Quintero rested his case. [4 RR 25].

---

## SUMMARY OF THE ARGUMENT

---

In his first issue, Quintero contends that the evidence is legally insufficient to support the verdict because there is no evidence of Quintero's mental state at the time of the shooting. To convict a person of murder obligates the attorney for the State to establish the required mental state. Establishing the mental state is often done through circumstantial evidence, but in this case there is no evidence—circumstantial or direct—to support the verdict. Nine witnesses testified at trial. Five of these witnesses were members of the Houston Police Department or the Medical Examiner's Office who arrived at the scene after the shooting had occurred. One witness was present at the scene but had taken a sufficient amount of prescription medicines to prevent her from remembering the events. Two others were in a nearby hotel and heard shots but did not see the shooting. And the last witness was the complaining witness' mother. Other than an agreement to buy and sell illegal drugs, there is no indication of the events surrounding this shooting. Because there is no evidence to support the required mental state, the evidence is legally insufficient to support the verdict.

In his second issue, Quintero contends that the trial court committed reversible error in denying his motion for new trial because it was not argued before the court within ten days of the verdict being announced. "Presentment," in

the context of a motion for new trial, requires that the motion for new trial be brought to the trial court's attention within ten days of the verdict being announced in open court. "Presentment" is satisfied when the motion is brought to the attention of the court coordinator. Here, via email, the coordinator was aware of the motion for new trial seven days after the trial court announced the verdict. The trial court, however, specifically denied the motion on the basis that it was not argued to the court within ten days. Did the trial court err?

_____

## FIRST ISSUE PRESENTED FOR REVIEW
_____

In his first issue, Quentero contends that the evidence was legally insufficient to convict him of murder because there was no evidence, circumstantial or direct, to establish the culpable mental state.

1.    Standard of Review for a Legal Sufficiency Challenge

When reviewing the legal sufficiency of the evidence, intermediate-appellate courts do not ask whether they believe the evidence at trial established guilt beyond a reasonable doubt.[4] Rather, they examine all of the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[5] This review of the evidence includes both properly and improperly admitted evidence.[6] Further, intermediate-appellate courts consider both direct and circumstantial evidence, and all reasonable inferences that may be drawn therefrom in making their determination.[7]

_____

[4] *Jackson v. Virginia*, 443 U.S. 307, 318−19, 99 S.Ct. 2781, 2789 (1979).

[5] *Id*. at 319, 99 S.Ct. at 2789; *Mason v. State*, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995) (en banc).

[6] *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[7] *Id*.

Under *Jackson*, appellate courts permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial.[8] However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions.[9]

The Court of Criminal Appeals provided the following example of the proper use of inferences:

> A woman is seen standing in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other factors must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. But, if there are other people with smoking guns in the room, absent other evidence of her guilt, it is not reasonable to infer that she was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation. But, what if there is also evidence that [all of] the other guns in the room are toy guns and cannot shoot bullets? Then, it would be reasonable to infer that no one with a toy gun was the shooter. It would also be reasonable to infer that the woman holding the smoking gun was the shooter.[10]

2.     Rational Trier of Fact in a Legal Sufficiency Review

---

[8] *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

[9] *Id.*

[10] *Id.* at 16.

In *Brooks*, the Court of Criminal Appeals considered what it meant to be a rational trier of fact. The Court of Criminal Appeals explained:

> [a] hypothetical that illustrates a proper application of the *Jackson v. Virginia* legal-sufficiency standard is [a] robbery-at-a-convenience-store case:

> The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on *all* the evidence the jury's finding of guilt is not a rational finding.[11] (Emphasis original.).

3. Murder

Section 19.02(b) of the Penal Code defines murder as follows:

(b) A person commits an offense if he:

  (1) intentionally or knowingly causes the death of an individual; [or]

  (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual;. . .[12]

    a. Definition of "Intentionally" and "Knowingly" in the Context of 19.02(b)

A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result.[13]

---

[11] *Brooks v. State*, 323 S.W.3d 893, 906−07 (Tex. Crim. App. 2010) (plurality op.).

[12] TEX. PENAL CODE § 19.02(b).

[13] TEX. PENAL CODE § 6.03(a); *Herrera v. State*, 367 S.W.3d 762, 770 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

A person acts knowingly with respect to a result of his conduct when he is aware his conduct is reasonably likely to cause the result.[14]

4.      Proof for Establishing Culpable Mental State

    a.      Law Governing Evidence of Culpable Mental State

This Court has often written some variant of the following statement, "[d]irect evidence of the elements of the offense, including the . . . culpable mental state, is not required."[15]   Thus, proof of a culpable mental state may be inferred from facts tending to prove its existence, typically: the acts, words, and conduct of the accused.[16]

    b.      Cases Where Culpable Mental State was Established through
            Circumstantial Evidence

One common method for determining that the circumstantial evidence supports a finding that the accused had the required culpable mental state occurs when the defendant testifies and the experts uniformly dispute the defendant's version of events.[17]

---

[14] TEX. PENAL CODE § 6.03(b); *Herrera*, 367 S.W.3d at 770.

[15] *Mayreis v. State*, ____ S.W.3d_____, No. 14-13-00769-CR, 2015 Tex. App. LEXIS 2746, *4 (Tex. App.—Houston [14th Dist.] March 24, 2015, pet ref'd.).

[16] *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *see also Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1996) (holding that requisite mental state established through defendant's words, acts, and/or conduct.).

[17] *See e.g.*, *Mayreis*, 2015 Tex. App. LEXIS 2746 at *10 (holding that circumstantial evidence of require mental state was met when "[t]he medical examiner, forensic anthropologist, and treating physician all found appellant's explanation of [the complaining witness'] injuries impossible and

24

Another common method to find circumstantial evidence of the culpable mental state is to consider the defendant's conduct before during and after the offense.[18]  Recently, in *Umanzor*, an unpublished opinion, this Court affirmed a conviction for murder when the appellant challenged the sufficiency of the evidence of his culpable mental state because:

> [a]lthough appellant claimed he was in fear for his life and for his family, that fear does not undercut his intentional acts of retrieving a firearm and loading it before engaging in the encounter with Reggie and Boogie. Further, appellant admittedly chased after Reggie and Boogie when they fled from his front porch, and appellant fired his gun in their direction.  Additionally, appellant lied to the police about who the perpetrator was in an apparent effort to hide his involvement, and appellant gave the murder weapon to his wife and told her to "dump it," which she did.[19]

c.      The Culpable Mental State is a Required Element

The homicide statues distinguish offenses based on the culpable mental state required to establish their commission. The culpable mental state for manslaughter is recklessness, which is "satisfied by evidence showing that the defendant consciously disregarded a known substantial and unjustifiable risk that serious

testified that the injuries did not result from accidently administering improper CPR or attempting to get [the complaining witness] to respond."); *see also Williams v. State*, 294 S.W.3d 674, 683 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding jury could infer intent from medical testimony that child's injuries were extensive, did not match appellant's explanation, and must have been sustained during an episode of abuse).

[18]  *Umanzor v. State*, No. 14-13-00958-CR, 2015 Tex. App. LEXIS 2281, *9−13 (Tex. App.—Houston [14th Dist.] March 26, 2015, pet. ref'd.) (memo op.) (not designated for publication).

[19] *Id*. at *9−10.

bodily injury would occur."[20] In contrast, "[t]he key to criminal negligence is the failure of the actor to perceive the risk created by his conduct."[21] Similarly, in involuntary manslaughter, "the accused must be aware of the risk, and consciously disregard it. In [criminally negligent homicide] it must be found that, though he ought to have been aware of the risk, he was not."[22]

5.      Facts of Quintero's Case

Most of the witnesses in this case arrived after the shooting had occurred. Hermesch, a felon and a member of a prison gang, testified that he and Black were under the influence of crack cocaine, that they went to get more from Quintero, that Quintero did not want Hermesch present for the sale, and that he never saw Quintero with a gun. Hermesch also testified that he heard shots sometime between ten minutes and two minutes after he left Stelly but that when he heard them he was back in his room.

Maria Hernandez testified that Quintero was at the Astro Inn on the night of the shooting, but testified that she could not see the location of the shooting from her office. [4 RR 104; 125].

Detective Stahlin testified that the security video from the Astro Inn showed Quintero at the Astro Inn, driving a white vehicle, and leaving the hotel around

---

[20] *Johnson v. State*, 915 S.W.2d 653, 658 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

[21] *Mendieta v. State*, 706 S.W.2d 651, 652 (Tex. Crim. App. 1986).

[22] *Saunders*, 913 S.W.2d at 572.

2:20 AM. [4 RR 151−52]. The video also showed Stelly walking in a direction that appears to follow the car that Quintero was driving.[4 RR 160].

Finally, Karen Reyes, Quintero's sister-in-law, testified that she had taken bars of the Xanax and that she and Quintero were at the Astro Inn on the night of the shooting. Reyes—the only witness to testify about a gun—testified that she knew Quintero had a gun only because he had shown it to her earlier in the day. [5 RR 9−10]. She testified that shortly before the shooting that she was ready to go home but that as she and Quintero left their room that they encountered two people and that she and Quintero then "drove" for an unspecified distance. [5 RR 12]. She testified that she did not see the shooting, that when the car stopped she "just heard shots," and that Quintero was outside of the car at this time, and that she saw "the black guy" by "the tree" as she and Quintero were driving away. [5 RR 13].

6. Application of Facts to Law

Here, the poverty of facts concerning Quintero's mental state should have prevented the jury from finding that Quintero "knowingly or intentionally" caused the death of Ronald Stelly or that Quintero "intended" through some action to "cause serious bodily injury" by committing "an act clearly dangerous to human life that cause[d] the death of [Ronald Stelly]."[23]

---

[23] Tex. Penal Code § 19.02(b).

Because murder is a result of conduct statute, the evidence had to have shown that Quintero had a conscious objective or desire to cause the death of Ronald Stelly; that Quintero was aware that his conduct would likely cause Ronald Stelly's death; or, that Quintero had a conscious objective or desire to cause serious injury to Ronald Stelly and that to further that objective that Quintero committed an act clearly dangerous to human life.[24]

The evidence presented here does not flatter Quintero. It shows that he was in a hotel room that he had not paid for with his sister-in-law, that he was selling drugs, that he left the hotel around 2:20 AM, that he had possessed a "medium black gun" earlier in the day and probably around the time of the shooting, that he did not want Hermesch present for the sale, not long after he left the hotel two shots were fired from a gun, that Stelly died as a result of being hit by a shot that entered above his "buttock crease," and that Quintero was outside of the car when the shooting occurred.

The facts of this case, however, distinguish it from a case like *Umanzor*, in which this Court recently found that the sum of the appellant's actions, viewed in the light most favorable to the jury's verdict, permitted "a rational jury to have . . . found [appellant] guilty beyond a reasonable doubt."[25] Unlike *Umanzor*, in which

---

[24] TEX. PENAL CODE §§ 6.03(a); 6.03(b); and 19.02(b); *Herrera*, 367 S.W.3d at 770.

[25] *Umanzor*, No. 14-13-00958-CR, 2015 Tex. App. LEXIS 2281, *9−13.

this Court had evidence that the appellant retrieved a gun and loaded it, chased the complaining witness, and then fired a shot, here the evidence is insufficient to create an inference that Quintero had the required mental culpability.[26]

Instead, this case requires circumstantial evidence and inferences from it to establish that Quintero possessed a gun at the time of the shooting and that he fired that gun. Reyes provided the only evidence that Quintero had possessed a gun when she testified that Quintero drove to her to the scene, that he was outside of the car when the shooting occurred, that Quintero had shown her a gun earlier at some unspecified time earlier during the day of June 4, 2015, and that Stelly was shot. Here, the combination of direct and circumstantial evidence combined with the inferences there from is sufficient to establish that Quintero possessed a gun on the morning of June 5, 2015 at the scene of the shooting.

The evidence, however, is not sufficient to show that Quintero fired this gun or that Quintero shot Stelly and certainly it is not sufficient for a rational juror to have concluded beyond a reasonable doubt that, arguendo, when Quintero fired the gun that it was his conscious objective or desire to cause the death of Stelly; that when he pulled the trigger on the gun that he was aware that his act was reasonably likely to cause the death of Stelly; or that it was his conscious objective or desire to

---

[26] *Id.*

cause serious bodily injury to Stelly.[27]  Specifically there was no evidence of what occurred in the moments before the shooting.  There is no evidence of any words exchanged between Stelly and Quintero, no evidence of a conflict between them, no evidence of a theft, etc.

The evidence in this case does not permit a rational juror to have concluded that Quintero had a conscious objective or desire to cause the death of Ronald Stelly; that Quintero was aware that his conduct would likely cause Ronald Stelly's death; or, that Quintero had a conscious objective or desire to cause serious injury to Ronald Stelly and that to further that objective that Quintero committed an act clearly dangerous to human life.[28]  In the words of the *Hooper* hypothetical, such conclusions would "require impermissible speculation."[29]  Because mere speculation, even if it originates from circumstantial evidence and inferences there from, cannot support a verdict, the evidence in this case was legally insufficient to have supported the jury's finding.

---

[27] *Hooper*, 214 S.W.3d at 16.

[28] TEX. PENAL CODE §§ 6.03(a); 6.03(b); and 19.02(b); *Herrera*, 367 S.W.3d at 770.

[29] *Hooper*, 214 S.W.3d at 16.

_____

## SECOND ISSUE PRESENTED FOR REVIEW

_____

In his second issue, Quintero contends that the trial court erred in declining to hear Quintero's motion for new trial on the ground that the motion was not argued to the trial court within ten days of the verdict being announced in open court.

1.  Standard of Review

This Court reviews a trial court's denial of a hearing on a motion for new trial for an abuse of discretion.[30] The purpose of a hearing on a motion for new trial is to (1) decide whether the case shall be retried; and (2) prepare a record for presenting issues on appeal in the event the motion is denied.[31]

2.  Law

A motion for new trial is timely filed when it is filed within 30 days of the trial court pronouncing sentence.[32]

When an accused presents a motion for new trial raising matters not determinable from the record that could entitle the defendant to relief, the trial court abuses its discretion in failing to hold a hearing.[33]

---

[30] *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009).

[31] *Id.* at 338.

[32] TEX. R. APP. P. 21.4(a).

To "present" a motion in the context of a motion for new trial, the defendant must give the trial court actual notice that he timely filed a motion for new trial and requests a hearing on the motion for new trial.[34] The presentment requirement has been satisfied if the motion for new trial is brought to the attention of the appropriate court coordinator.[35]

3. Facts

Here, the trial court pronounced Quintero's sentence in open court on February 17, 2015. [5 RR 52]. Quintero filed his ten-page motion for new trial on March 17, 2015. [CR 172–893]. Quintero supported his motion with a sworn statement. [CR 187]. Quintero alleged that his attorney had been constitutionally ineffective for failing to investigate the facts of his case which would have permitted Quintero to ask for a self-defense instruction. [CR 172–80]. On March 24, 2014, Quintero's counsel emailed Tramesha Randall, the Court Coordinator for Quintero's trial court and asked for a hearing. The two dates that Randall had available were April 9, 2015 and May 5, 2015. [SCR 5]. On April 8, 2015, the trial court entered an order denying Quintero's motion for new trial without a

---

[33] *King v. State*, 29 S.W.3d 556, 559 (Tex. Crim. App. 2000).

[34] TEX. R. APP. P. 21.6; *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005).

[35] *Butler v. State*, 6 S.W.3d 636, 640–41 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (concluding that presenting motion for new trial to court coordinator is sufficient to satisfy Tex. R. App. P. 21.6's presentment requirement).

hearing because the motion "was not presented to this Court within ten days of filing, as required by Rule 21.4(a) of the Texas Rules of Appellate Procedure." [CR 196]. Then, on April 10, 2015, the trial court entered an order stating:

> On April 9, 2015, this Court was presented with Juan Jose Quintero's Motion for New Trial. This Court denied a hearing on the Motion on the basis that it was untimely presented to the Court. Specifically, this Court found that the Motion was not presented, in the form of arguing it to the Court, within ten days of it being filed and therefore was overruled by operation of law and therefore Defendant was not entitled to a hearing on the merits of the Motion.

[CR 210].

4.    Analysis

Here, the trial court committed reversible error by denying Quintero's Motion for New Trial without a hearing. Quintero filed his motion 28 days after the trial court pronounced his sentence in open court.[36]  [CR 172; 5 RR 52]. Quintero's motion was supported with a sworn statement and it raised legitimate issues concerning the quality of Quintero's representation. [CR 172–85]. Seven days after the Motion was filed, Quintero's attorney emailed the appropriate court coordinator and requested a hearing. [SCR 5]. The trial court then improperly denied the motion because it had not been timely presented. [CR 209–10]. By specifically holding that the motion was overruled by operation of law on April 10, 2015 because it had not been "presented, in the form of arguing [the motion for

---

[36] TEX. R. APP. P. 21.4(a).

new trial] to the Court, within ten days of it being filed. . ." the trial court committed reversible error.

5.     Error Analysis

Rule 44.2(b) provides that this Court may not reverse the trial court's decision without finding that the trial court's decision affected Quintero's substantial rights.[37]  A substantial right is affected when the error had a substantial and injurious effect or influence on the final resolution of a case.[38]

Here, Quintero is serving a life sentence and he contends that his trial attorney was constitutionally ineffective.  The trial court's erroneous decision denied Quintero the opportunity to argue to the Court that his counsel was so ineffective that he deserved a new trial.[39]  Because the Motion for New Trial and the evidence supporting it argues that Quintero's trial attorney never questioned Quintero about the facts of this case and that this cost Quintero the opportunity to present a self-defense argument, this error adversely affected Quintero's substantial rights and reversal is warranted.[40]

---

[37] TEX. R. APP. P. 44.2(b).

[38] *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

[39] TEX. R. APP. P. 21.3.

[40] TEX. R. APP. P. 44.2(b).

## CONCLUSION AND PRAYER

Quintero asks this Court to reverse the trial court's verdict and to render acquittal, in the alternative, Quintero asks this Court to reverse the trial court's judgment and render a verdict for a lesser-included offense of murder and to remand the case to the trial court for a new punishment hearing. Quintero also asks this Court to reverse the trial court's decision to deny a hearing on the motion for new trial and to remand this case for a hearing on Quintero's motion.

Respectfully Submitted

/s/ Niles Illich
Niles Illich
SBOT: 24069969
Law Office of Niles Illich, Ph.D., J.D.
701 Commerce
Suite 400
Dallas, Texas 75202
Direct: (972) 802−1788
Facsimile: (972) 236−0088
Email: Niles@appealstx.com

CERTIFICATE OF COMPLIANCE

This is to certify that this brief complies with Rule 9.8 of the Texas Rules of Appellate Procedure because it is computer generated and does not exceed 15,000 words. Using the word count feature included with Microsoft Word, the undersigned attorney certifies that this brief contains 7,102 words. This brief also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font for the text and 12-point Times New Roman font for the footnotes.

/s/ Niles Illich

CERTIFICATE OF SERVICE

This is to certify that on this the 31st day of May, 2015 that a true and correct copy of this Brief was served on lead counsel for all parties in accord with Rule 9.5 of the Texas Rules of Appellate Procedure. Service was accomplished through an electronic commercial delivery service and electronic mail as follows:

Harris County District Attorney's Office
Alan Curry
1201 Franklin Street
Suite 600
Houston, Texas 77002-1923

/s/ Niles Illich

**APPENDIX**:


Table of Contents

Tab One:
Judgment

Tab Two:
Orders on Motion for New Trial

Tab Three:
Statutes and Rules

# TAB ONE



| THE STATE OF TEXAS | § | IN THE 351ST DISTRICT |
| | § | |
| v. | § | COURT |
| | § | |
| QUINTERO, JUAN JOSE | § | HARRIS COUNTY, TEXAS |
| | § | |
| STATE ID NO.:TX08534855 | § | |

## JUDGMENT OF CONVICTION BY JURY

| Judge Presiding: | HON. MARK KENT ELLIS | Date Judgment Entered: | 02/17/2015 |
| Attorney for State: | ALLARD, JOSEPH | Attorney for Defendant: | SIMS, JAMES M. |

**Offense for which Defendant Convicted:**
**MURDER**

| Charging Instrument: | Statute for Offense: |
| **INDICTMENT** | **N/A** |

**Date of Offense:**
**06/05/2013**

| Degree of Offense: | Plea to Offense: |
| **1ST DEGREE FELONY** | **NOT GUILTY** |
| Verdict of Jury: | Findings on Deadly Weapon: |
| **GUILTY** | **YES, A FIREARM** |

| Plea to 1st Enhancement Paragraph: | N/A | Plea to 2nd Enhancement/Habitual Paragraph: | N/A |
| Findings on 1st Enhancement Paragraph: | N/A | Findings on 2nd Enhancement/Habitual Paragraph: | N/A |

| Punished Assessed by: | Date Sentence Imposed: | Date Sentence to Commence: |
| **JURY** | **02/17/2015** | **02/17/2015** |

| Punishment and Place of Confinement: | **LIFE INSTITUTIONAL DIVISION, TDCJ** |

**THIS SENTENCE SHALL RUN CONCURRENTLY.**

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR N/A .

| Fine: | Court Costs: | Restitution: | Restitution Payable to: |
| $ N/A | $ 284 454 | $ N/A | ☐ VICTIM (see below)  ☐ AGENCY/AGENT (see below) |

Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62.

The age of the victim at the time of the offense was **N/A** .

If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order.

| Time Credited: | From: | 06/11/2013 to 02/17/2015 | From: | to |
| | From: | to | From: | to |
| | From: | to | From: | to |

If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below.

**$DAYS NOTES: TOWARD FINE AND COSTS**

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in Harris County, Texas. The State appeared by her District Attorney.

**Counsel / Waiver of Counsel (select one)**

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The INDICTMENT was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

151

The Court received the verdict and **ORDERED** it entered upon the minutes of the Court.

**Punishment Assessed by Jury / Court / No election (select one)**

☒ **Jury.** Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☐ **Court.** Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election.** Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court **FINDS** Defendant committed the above offense and **ORDERS, ADJUDGES AND DECREES** that Defendant is **GUILTY** of the above offense. The Court **FINDS** the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court **ORDERS** Defendant punished as indicated above. The Court **ORDERS** Defendant to pay all fines, court costs, and restitution as indicated above.

**Punishment Options (select one)**

☒ **Confinement in State Jail or Institutional Division.** The Court **ORDERS** the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, Institutional Division, TDCJ**. The Court **ORDERS** Defendant to be confined for the period and in the manner indicated above. The Court **ORDERS** Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court **ORDERS** that upon release from confinement, Defendant proceed immediately to the **Harris County District Clerk's office.** Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court **ORDERS** Defendant immediately committed to the custody of the **Sheriff of Harris County, Texas** on the date the sentence is to commence. Defendant shall be confined in the **Harris** County Jail for the period indicated above. The Court **ORDERS** that upon release from confinement, Defendant shall proceed immediately to the **Harris County District Clerk's office.** Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a **FINE ONLY.** The Court **ORDERS** Defendant to proceed immediately to the **Office of the Harris County District Clerk.** Once there, the Court **ORDERS** Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

**Execution / Suspension of Sentence (select one)**

☒ The Court **ORDERS** Defendant's sentence **EXECUTED.**

☐ The Court **ORDERS** Defendant's sentence of confinement **SUSPENDED.** The Court **ORDERS** Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court **ORDERS** that Defendant is given credit noted above on this sentence for the time spent incarcerated.

Furthermore, the following special findings or orders apply:

**DEADLY WEAPON.**
**THE COURT FINDS DEFENDANT USED OR EXHIBITED A DEADLY WEAPON, NAMELY, A FIREARM, DURING THE COMMISSION OF A FELONY OFFENSE OR DURING IMMEDIATE FLIGHT THEREFROM OR WAS A PARTY TO THE OFFENSE AND KNEW THAT A DEADLY WEAPON WOULD BE USED OR EXHIBITED. TEX. CODE CRIM. PROC. ART. 42.12 §3G.**

---

**Signed and entered on 02/17/2015**

X _Mark Kent En_

**MARK KENT ELLIS**
JUDGE PRESIDING

Notice of Appeal Filed: _FEBRUARY 18, 2015_

Mandate Received: _____ Type of Mandate: _____

After Mandate Received, Sentence to Begin Date is: _____

Jail Credit: _____
Def Received on at ☐ AM ☐ PM

By: , Deputy Sheriff of Harris County

Clerk: **J REGGINS**
Case Number:
Defendant: QUINTERO, JUAN JOSE
EN/KR04: 999   LCBT: ✓   LCBU: ✓   EN/KR18: 999

Right Thumbprint

152

# TAB TWO

Cause No.: 139066601010

| THE STATE OF TEXAS | § | IN THE 351ST CRIMINAL |
|---|---|---|
| | § | |
| -v- | § | DISTRICT COURT |
| | § | |
| JUAN JOSE QUINTERO | § | OF HARRIS COUNTY |

## ORDER

Juan Jose Quintero's Motion for New Trial was heard on this the _____ day of March, 2015.

This Court FINDS that the Motion for New Trial ~~was~~ *WAS NOT MIKE* presented to this Court within ten days of filing, as required by Rule 21.4(a) of the Texas Rules of Appellate Procedure.

After considering the Motion, the Response, and the arguments of counsel, this Court GRANTS Juan Jose Quintero a new trial. This Court awards a new trial on the basis that Quintero's counsel was constitutionally ineffective. In coming to this conclusion, this Court formally admitted the exhibits attached to Quintero's Motion.

*MNT ⊗ DENIED*

Signed on this the __8__ day of __APRIL__, 2015.

_____
The Honorable Mark Kent Ellis

13

Cause No.: 139066601010

| THE STATE OF TEXAS | § | IN THE 351ST CRIMINAL |
| | § | |
| -v- | § | DISTRICT COURT |
| | § | |
| JUAN JOSE QUINTERO | § | OF HARRIS COUNTY |

## ORDER

On April 9, 2015, this Court was presented with Juan Jose Quintero's Motion for New Trial. This Court denied a hearing on the Motion on the basis that it was untimely presented to the Court. Specifically, this Court found that the Motion was not presented, in the form of arguing it to the Court, within ten days of it being filed and therefore was overruled by operation of law and therefore Defendant was not entitled to a hearing on the merits of the Motion.

Signed on this the _____ day of APR 1 0 2015, 2015.

_____
The Honorable Mark Kent Ellis

210

# TAB THREE

PENAL CODE § 6.03. DEFINITIONS OF CULPABLE MENTAL STATES.

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

PENAL CODE § 19.02

(a) In this section:

(1) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

(2) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(b) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

41

(3)  commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

(c)  Except as provided by Subsection (d), an offense under this section is a felony of the first degree.

(d)  At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

TEXAS RULE OF APPELLATE PROCEDURE 21 NEW TRIALS IN CRIMINAL CASES

21.1  Definition.

(a) New trial  means the rehearing of a criminal action after the trial court has, on the defendant's motion, set aside a finding or verdict of guilt.

(b) New trial on punishment  means a new hearing of the punishment stage of a criminal action after the trial court has, on the defendant's motion, set aside an assessment of punishment without setting aside a finding or verdict of guilt.

21.2  When Motion for New Trial Required.  --A motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record.

21.3  Grounds.  --The defendant must be granted a new trial, or a new trial on punishment, for any of the following reasons:

(a)  except in a misdemeanor case in which the maximum possible punishment is a fine, when the defendant has been unlawfully tried in absentia or has been denied counsel;

(b)  when the court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights;

(c)  when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion;

(d)  when a juror has been bribed to convict or has been guilty of any other corrupt conduct;

(e)  when a material defense witness has been kept from court by force, threats, or fraud, or when evidence tending to establish the defendant's innocence has been intentionally destroyed or withheld, thus preventing its production at trial;

(f)  when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case; or when a juror became so intoxicated that his or her vote was probably influenced as a result;

(g)  when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial; or

(h)  when the verdict is contrary to the law and the evidence.

21.4  Time to File and Amend Motion.

(a)  To File.  --The defendant may file a motion for new trial before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court.

(b)  To Amend.  --Within 30 days after the date when the trial court imposes or suspends sentence in open court but before the court overrules any preceding motion for new trial, a defendant may, without leave of court, file one or more amended motions for new trial.

21.5  State May Controvert; Effect.  --The State may oppose in writing any reason the defendant sets forth in the motion for new trial. The State's having opposed a motion for new trial does not affect a defendant's responsibilities under 21.6.

21.6  Time to Present.  --The defendant must present the motion for new trial to the trial court within 10 days of filing it, unless the trial court in its discretion permits it to be presented and heard within 75 days from the date when the court imposes or suspends sentence in open court.

21.7  Types of Evidence Allowed at Hearing.  --The court may receive evidence by affidavit or otherwise.

21.8  Court's Ruling.

(a)  Time to Rule.  --The court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court.

(b)  Ruling.  --In ruling on a motion for new trial, the court may make oral or written findings of fact. The granting of a motion for new trial must be accomplished by written order. A docket entry does not constitute a written order.

(c)  Failure to Rule.  --A motion not timely ruled on by written order will be deemed denied when the period prescribed in (a) expires.

21.9  Granting a New Trial.

(a)  A court must grant a new trial when it has found a meritorious ground for new trial, but a court must grant only a new trial on punishment when it has found a ground that affected only the assessment of punishment.

(b)  Granting a new trial restores the case to its position before the former trial, including, at any party's option, arraignment or pretrial proceedings initiated by that party.

(c)  Granting a new trial on punishment restores the case to its position after the defendant was found guilty. Unless the defendant, State, and trial court all agree to a change, punishment in a new trial shall be assessed in accordance with the defendant's original election under article 37.07, § 2(b) of the Code of Criminal Procedure.

(d)  A finding or verdict of guilt in the former trial must not be regarded as a presumption of guilt, nor may it be alluded to in the presence of the jury that hears the case on retrial of guilt. A finding of fact or an assessment of punishment in the former trial may not be alluded to in the presence of the jury that hears the case on retrial of punishment.


TEXAS RULE OF APPELLATE PROCEDURE 44 REVERSIBLE ERROR

44.1  Reversible Error in Civil Cases.

(a)  Standard for Reversible Error.  --No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

(1)  probably caused the rendition of an improper judgment; or

(2)  probably prevented the appellant from properly presenting the case to the court of appeals.

(b)  Error Affecting Only Part of Case.  --If the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error. The court may not order a separate trial solely on unliquidated damages if liability is contested.

44.2  Reversible Error in Criminal Cases.

(a)  Constitutional Error.  --If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b)  Other Errors.  --Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

(c)  Presumptions.  --Unless the following matters were disputed in the trial court, or unless the record affirmatively shows the contrary, the court of appeals must presume:

(1)  that venue was proved in the trial court;

(2)  that the jury was properly impaneled and sworn;

(3)  that the defendant was arraigned;

(4)  that the defendant pleaded to the indictment or other charging instrument; and

(5)  that the court's charge was certified by the trial court and filed by the clerk before it was read to the jury.

44.3  Defects in Procedure.  --A court of appeals must not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities.

44.4  Remediable Error of the Trial Court.

(a)  Generally.  --A court of appeals must not affirm or reverse a judgment or dismiss an appeal if:

(1)  the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals; and

(2)  the trial court can correct its action or failure to act.

(b)  Court of Appeals Direction if Error Remediable.  --If the circumstances described in (a) exist, the court of appeals must direct the trial court to correct the error. The court of appeals will then proceed as if the erroneous action or failure to act had not occurred.